IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LADONNA WILLIAMS,

    Plaintiff,

v.

SHERIFF KEMUEL KIMBROUGH, in his official capacity as the Clayton County Sheriff, ALICIA PARKES, individually and in her official capacity as Deputy Sheriff of Clayton County, and JOHN DOE 1 & 2, individually and in their official capacities as employees of the Clayton County Sheriff's Department,

    Defendants.

CIVIL ACTION NO.

1:12-cv-1570-JEC

## ORDER & OPINION

This action is before the Court on defendants' First and Second Motions to Dismiss [8] and [20] and plaintiff's Motion to Add Parties [10]. The Court has reviewed the record and the arguments of the parties and, for the following reasons, concludes that defendants' First Motion to Dismiss [8] should be **DENIED as moot**, defendants' Second Motion to Dismiss [20] should be **GRANTED,** and plaintiff's Motion to Add Parties [10] should be **DENIED**.

**BACKGROUND**

This is an employment discrimination case. Sometime in 2010, plaintiff met with defendant Kimbrough to discuss an employment opportunity in the Clayton County Sheriff's Office. (Am. Compl. [11] at ¶ 11.) According to plaintiff, Kimbrough was flirtatious during the meeting. (*Id.*) He gave plaintiff his cell phone number and told her to call any time she needed to reach him. (*Id.*) Following the meeting, Kimbrough decided to hire plaintiff as a clerk in the Records Department. (*Id.* at ¶ 14.)

Kimbrough subsequently arranged for plaintiff to take the GED test and personally drove her to the test site. (*Id.* at ¶ 15.) Plaintiff failed the GED test, as well as the Georgia Crime Information Center ("GCIC") and National Crime Information Center ("NCIC") tests. (Am. Compl. [11] at ¶ 16.) Consequently, plaintiff was told that she would have to interview with a Hiring Board before assuming her position. (*Id.* at ¶¶ 16-17.) Based upon her interview, the Board reported that plaintiff was arrogant, unprofessional and unqualified for a job with the Sheriff's Office. (*Id.* at ¶ 17.) Nevertheless, Kimbrough permitted plaintiff to begin working in the Records Department. (*Id.* at ¶ 18.)

During plaintiff's subsequent employment, Kimbrough stopped by plaintiff's desk to check on her approximately three times a week. (*Id.* at ¶ 19.) At the same time, defendant Alicia Parkes began

2

stopping by plaintiff's desk and eventually befriended her. (Am. Compl. [11] at ¶ 20.) Shortly thereafter, Parkes began making unwanted sexual remarks and advances towards plaintiff. (*Id.* at ¶¶ 21-22.) Specifically, Parkes:

(1) asked plaintiff if she found Parkes attractive;

(2) asked plaintiff if she would consent to a sexual encounter with Parkes and Kimbrough;

(3) sent unsolicited nude pictures to plaintiff;

(4) stated loudly and in front of other employees that plaintiff's breasts were "too large for her bra" and then grabbed her own breasts and shook them at plaintiff; and

(5) showed plaintiff a cell-phone video that Parkes had taken of another female employee using the restroom.

(*Id.* at ¶ 22.)

Plaintiff reported the above incidents to her supervisor and to Internal Affairs on August 20, 2010. (*Id.* at ¶ 23.) Upon submitting her report, plaintiff was immediately transferred to the warrant division of the Sheriff's Office. (*Id.* at ¶ 24.) After the transfer, Parkes and other Sheriff's Office employees began taunting and harassing plaintiff. (Am. Compl. [11] at ¶ 24.) On the other hand, Kimbrough avoided all contact with plaintiff. (*Id.*)

Internal Affairs investigated plaintiff's claims and concluded that both plaintiff and Parkes had violated certain policies of the Clayton County Sheriff's Office. (*Id.* at ¶ 25.) As a result of the investigation, Parkes was reprimanded and eventually placed on

3

administrative leave in connection with the restroom videotaping incident. (*Id.* at ¶¶ 28-31.) Plaintiff was terminated, effective September 2, 2010. (*Id*. at ¶ 25.)

Following her termination, plaintiff initiated this lawsuit. (Compl. [1].) In her initial complaint, plaintiff asserted a federal claim for gender discrimination and state claims for hostile work environment, retaliation and intentional and negligent infliction of emotional distress. (*Id*. at ¶¶ 36-68.) Defendants moved to dismiss those claims, and plaintiff responded with an amended complaint and a related motion to add several parties. (Defs.' Mot. to Dismiss [8] and Pl.'s Mot. to Add Parties [10].) In the amended complaint, plaintiff asserts federal claims for First Amendment retaliation under §§ 1981 and 1983 and state claims for intentional infliction of emotional distress and negligent hiring and retention. (Am. Compl. [11] at ¶¶ 39-66.) Defendants filed a second motion to dismiss the amended complaint. (Defs.' Mot. to Dismiss [20].)

## **DISCUSSION**

### **I. DEFENDANTS' MOTIONS TO DISMISS [8, 20]**

In the amended complaint, plaintiff has either abandoned or repled all of her initial claims. (*See* Compl. [1] and Am. Compl. [11].) Accordingly, defendants' first motion to dismiss [8] is superceded by the amended complaint and is **DENIED as moot**. In determining whether to dismiss the action, the Court will only

4

AO 72A
(Rev.8/82)

consider defendants' second motion [20] pertaining to the claims asserted in the amended complaint [11].

**A. Applicable Standard**

In deciding a motion to dismiss, the Court assumes that all of the allegations in the complaint are true and construes the facts in favor of the plaintiff. *Randall v. Scott,* 610 F.3d 701, 705 (11th Cir. 2010). That said, in order to avoid dismissal a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "facial[ly] plausib[le]" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. Plaintiff's Claims**

1. <u>Section 1981</u>

Plaintiff indicates in her response that she intends to withdraw her § 1981 claim. (Pl.'s Resp. Br. [22] at 12.) Section 1981 does not protect against gender discrimination, sexual harassment or retaliation resulting from complaints of either. *See Ferrill v. Parker Grp., Inc.,* 168 F.3d 468, 472 (11th Cir. 1999)("Section 1981 prohibits intentional race discrimination") and *Tippie v. Spacelabs Med., Inc.,* 180 Fed. App'x 51, 56 (11th Cir. 2006)(dismissing a §

5

1981 claim).  Rather, § 1981 by its terms applies only to racial discrimination.  42 U.S.C. § 1981 (requiring that "[a]ll persons" be granted the same contractual rights as "white citizens").  Plaintiff does not allege, and none of the facts in the amended complaint support an inference of, race discrimination.  (Am. Compl. [11].) Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's § 1981 claim.

### 2. Section 1983

To prevail on her § 1983 claim, plaintiff must show that defendants (1) violated her constitutional rights (2) under color of state law.  *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005). In support of her § 1983 claim, plaintiff alleges that defendants terminated her employment under color of state law and in violation of the First Amendment.  (Am. Compl. [11] at ¶ 40-41.) Specifically, plaintiff claims that her termination was in retaliation for complaining about the sexual harassment that she experienced in the Sheriff's Office.  (*Id.* at ¶¶ 41-44.)  According to plaintiff, the termination therefore violated her right to free speech under the First Amendment.  (*Id.* at ¶ 41.)

As a threshold requirement, a First Amendment plaintiff must establish that she engaged in protected speech.  *Battle v. Bd. of Regents for Ga.,* 468 F.3d 755, 760 (11th Cir. 2006).  A public employee's speech is only protected when the employee speaks "as a

6

citizen on a matter of public concern." *Id.* When a public employee speaks not as a citizen, but as an employee, the speech is not protected. *Mitchell v. Hillsborough Cnty.,* 468 F.3d 1276, 1284 (11th Cir. 2006). Thus, personal grievances and work-related complaints do not implicate the First Amendment. *Id. See also Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006)(emphasizing that a public employee must speak as a citizen to be protected under the First Amendment) and *Boyce v. Andrew,* 510 F.3d 1333, 1345 (11th Cir. 2007)(First Amendment protection is not available to speech that only pertains to internal employee matters).

The only speech that plaintiff alleges, either in the amended complaint or in her briefing, is the sexual harassment report that she submitted to her immediate supervisor and to Internal Affairs. (Am. Compl. [11] at ¶ 23.) By submitting the report, plaintiff claims that she was speaking out on a matter of public concern: namely, the illegal and potentially criminal activities of Clayton County employees. (*Id.* at ¶¶ 42-43.) Nevertheless, it is apparent from the face of the complaint and from her briefing that plaintiff spoke as an employee, and not as a citizen. (*Id.* at ¶¶ 23, 42-43 and Pl.'s Resp. Br. [22] at 8-9.) Plaintiff's internal sexual harassment complaint was not designed to publicize malfeasance in the Sheriff's Office, but to improve the conditions of her employment. *See Boyce,* 510 F.3d at 1346 (denying First Amendment protection where the

7

purpose of the plaintiffs' complaints was not to raise public awareness but to have their caseloads reduced). As such, her complaint does not constitute protected speech. *Id.*

In her response brief, plaintiff cites a news report concerning the events that led to her sexual harassment complaint. (Pl.'s Resp. Br. [22] at 8.) However, plaintiff does not suggest that she reported the story to the media. Indeed, plaintiff concedes that she only spoke about her harassment in the context of the internal grievance that she filed with her supervisor and Internal Affairs. (*Id.* at 9 and Am. Compl. [11] at ¶ 23.) That the events in the Sheriff's Office were considered newsworthy does not change the fact that plaintiff only spoke about those events as an employee, rather than as a citizen. *Boyce,* 510 F.3d at 1344 (the relevant inquiry is not whether the public is interested in the speech, but whether the purpose of the speech was to raise an issue of public concern) and *Mitchell,* 468 F.3d at 1283-84 (an employee's "quotidian, work-a-day grievances are not constitutionally protected").

As indicated above, a public employee "'may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.'" *Boyce,* 510 F.3d at 1344 (quoting *Ferrara v. Mills,* 781 F.2d 1508, 1516 (11th Cir. 1986). Applying that principle, the Eleventh Circuit has consistently rejected First Amendment claims based on essentially

8

the same facts that plaintiff asserts in this case. *See Morgan v. Ford,* 6 F.3d 750, 754-55 (11th Cir. 1993)(the plaintiff's internal complaints about her sexual harassment did not constitute protected speech) and *Maggio v. Sipple,* 211 F.3d 1346, 1352-53 (11th Cir. 2000)(reaching the same conclusion as *Morgan*). Under the relevant case law, plaintiff's allegations concerning her speech do not state a "facial[ly] plausib[le]" claim for relief under the First Amendment. *Iqbal*, 556 U.S. at 678. Accordingly, the Court **GRANTS** defendants' motion to dismiss [20] plaintiff's First Amendment claim.

### 3. Remaining State Law Claims

As all of plaintiff's federal claims have been removed from the case, 28 U.S.C. § 1367(c)(3) applies. Pursuant to § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over pendant state claims if it has dismissed all of the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Supreme Court has observed that:

> a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendant state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing th[ose claims] without prejudice.

9

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)(footnote omitted). *See also Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1550 (11th Cir. 1992).

The Court concludes that dismissal of plaintiff's state law claims is appropriate in this case because plaintiff's federal claims have been dismissed in the early stages of the litigation. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Accordingly, the Court **DISMISSES without prejudice** plaintiff's remaining state law claims for negligent hiring and retention and intentional infliction of emotional distress.

## II. <u>**PLAINTIFF'S MOTION TO ADD PARTIES [10]**</u>

In her motion to add parties, plaintiff seeks permission to assert claims against Kimbrough in his individual capacity and to add Clayton County and Garland Watkins, Chief Deputy of the Clayton County Sheriff's Department, as defendants. (Pl.'s Mot. to Add Parties [10].) Plaintiff does not assert any allegations against Kimbrough or the new defendants sufficient to cure the pleading deficiencies noted above. Accordingly, plaintiff's motion to add parties [10] is **DENIED** because the amendments plaintiff suggests would be futile.

10

## CONCLUSION

For the foregoing reasons, the Court **DENIES as moot** defendants' First Motion to Dismiss [8]; **DENIES** plaintiff's Motion to Add Parties [10]; and **GRANTS** defendants' Second Motion to Dismiss [20]. Plaintiff's federal claims are dismissed **WITH PREJUDICE**. Her state law claims are dismissed **WITHOUT PREJUDICE**. The clerk is directed to **DISMISS** and **CLOSE** this action.

SO ORDERED, this 13th day of February, 2013.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)